UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOL M. LEINER,

    Plaintiff,

v.

DOW INC., THE DOW CHEMICAL
COMPANY, and DOW SILICONES
CORPORATION,

    Defendants.

Case No. 22-13058

Honorable Denise Page Hood

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (#5),
DENYING PLAINTIFF'S MOTION TO DISMISS (#16),
GRANTING MOTION FOR LEAVE TO FILE MEMORANDUM (#18)
AND
DISMISSING ACTION**

**I.    BACKGROUND**

On December 16, 2022, this action was transferred to this District from the United States District Court, Eastern District of New York. (ECF No. 1) On July 12, 2022, Plaintiff Sol M. Leiner filed a summons, and thereafter a complaint, before the New York Supreme Court, Queens County, on July 12, 2022 and October 12, 2022, respectively, against Orentreich Medical Group, LLP, Estate of Norman Orentreich, Dow, Inc., The Dow Chemical Company and Dow Silicones Corporation (collectively, "Dow Defendants"). (ECF No. 1, PageID.9-.15; PageID.17-.45) The

Dow Defendants removed the matter to federal court, in the Eastern District of New York. Leiner filed an Amended Complaint on November 2, 2022. (ECF No. 2) Following a December 6, 2022 conference with the court, the claims against the Dow Defendants were transferred to this Court, and the remaining state law claims were remanded to the New York state court.

Leiner was treated by Dr. Norman Orentreich by injection of liquid injectable silicone to eliminate acne scars on December 29, 1982. (ECF No. 2, PageID.174-175) Leiner alleges that the Dow Defendants and/or Dr. Orentreich's office developed and manufactured the silicone used in the injection. (*Id.* at PageID.179-180, .191) Leiner claims that as a result of these injections, he suffered injuries that left him severely injured, permanently disfigured and requiring ongoing treatment. *(Id.* PageID.177) Leiner claims he learned of his injuries on December 28, 2020 after undergoing a biopsy. (*Id*. at PageID.182) This suit followed alleging strict products liability, negligence, failure to warn, and res ipsa loquitur. (*Id*. at PageID.179-.187)

This matter is now before the Court on the Dow Defendants' Motion to Dismiss filed on December 29, 2022. (ECF No. 5) Leiner filed a Response to the Motion, along with a Re-Amended Complaint on January 10, 2023. (ECF Nos. 8, 9) A reply was filed by the Dow Defendants on January 24, 2023. (ECF No. 11) Leiner thereafter filed a Motion to Dismiss Defendant's Defective Motion on February 22,

2023, which was responded to by the Dow Defendants on March 7, 2023. (ECF Nos. 16, 17) A virtual hearing was held on the matter.

## II. ANALYSIS

### A. Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001). Federal courts hold the *pro se*

complaint to a "less stringent standard" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972). However, *pro se* litigants are not excused from failing to follow basic procedural requirements. *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir. 1991); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988).

### B.     Dow Silicones (f/k/a Dow Corning) Bankruptcy Discharge

The Dow Defendants argue that all claims against Dow Silicones, f/k/a Dow Corning Corporation, are barred because Dow Silicones' debts arising before the date of the confirmation were discharged before the bankruptcy action. Leiner responds that the discharge did not include medical grade liquid silicone claims and also did not discharge claims of fraudulent concealment and/or willful and malicious injury.

The Amended Joint Plan of Reorganization ("Plan") in the Dow Corning Corporation ("Dow Corning") bankruptcy action governs this matter. *In Re Dow Corning Corp.,* Case No. 95-20512 (E.D. Mich. Bankr.). The Plan was confirmed in 1999 and became effective on June 1, 2004. Section 8.7 of the Amended Plan of Reorganization states that this Court retains jurisdiction to resolve controversies and disputes regarding the interpretation and implementation of the Plan and the Plan Documents, including the Settlement Facility and Fund Distribution Agreement ("SFA"), and, to enter orders regarding the Plan and Plan Documents. (Plan, §§ 8.7.3, 8.7.4, 8.7.5)

Generally, the provisions of a confirmed plan bind the debtor and any creditor. 11 U.S.C. § 1141(a); *In re Adkins,* 425 F.3d 296, 302 (6th Cir. 2005). Section 1127(b) is the sole means for modification of a confirmed plan which provides that the proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of the plan. 11 U.S.C. § 1127(b). "In interpreting a confirmed plan courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); 11 U.S.C. § 1141(a). "An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation." *City of Covington v. Covington Landing, Ltd. P'ship,* 71 F.3d 1221, 1227 (6th Cir. 1995). A court construing an order consistent with the parties' agreement does not exceed its power. *Id.* at 1228.

A bankruptcy court's confirmation of a reorganization plan discharges the debtor from any debt that arose before the date of the confirmation, regardless of whether proof of the debt is filed, the claim is disallowed, or the plan is accepted by the claim's holder. 11 U.S.C. § 1141(d)(1)(A). A "claim" includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured,

5

or unsecured[.]" 11 U.S.C. § 101(5)(A).

The Plan in the Dow Corning bankruptcy action provided that the debtor "shall be discharged from and its liability shall be extinguished completely in respect of any Claim . . . whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arose . . . from any conduct of the Debtor prior to the Confirmation Date . . . ." (ECF No. 5, Ex. A, Plan § 8.1.)

Leiner's claims against Dow Silicones arise from conduct that allegedly occurred in 1982, years before the Plan was confirmed on November 30, 1999. This Court finds that any claims alleged by Leiner in his Complaint and his subsequent Amended Complaints against Dow Silicones were discharged under the Plan and must be dismissed. The discharge includes the medical grade liquid silicone alleged by Leiner because he claims that this silicone injured him, and, as such are "Products Liability Claims" under the Plan. The discharge also includes "Unmanifested Claims" which is defined as a "Personal Injury Claim of a Claimant who, as of the Effective Date, has not suffered any injury alleged to have been caused, in whole or in part, by a product of the Debtor." (Plan, § 1.176) The Court finds that Leiner's discovery of his claim after a December 22, 2020 biopsy could be considered an "Unmanifested Claim," which was discharged under the Plan. This Court has ruled that Dow

6

Silicones is "discharged and, essentially released, from the various claims against it." *In re Dow Corning Corp.*, 255 B.R. 445, 475–76 (E.D. Mich. 2000), aff'd and remanded, 280 F.3d 648 (6th Cir. 2002).

  **C.** **The Plan's Release and Injunction Provisions**

  The Dow Defendants also argue that Leiner's claims against them are dismissed because they are barred by the release in Section 8.3 of the Plan. Leiner responds that he requires discovery on this issue.

  Section 8.3 of the Plan (the "release provision") provides that personal-injury claims against various parties are deemed waived and released upon the effective date of the confirmation of the Plan. Section 8.4 (the "injunction provision") provides that holders of the claims are enjoined from commencing or continuing any action seeking to enforce their claims against the Released Parties, including the Debtor–Affiliated Parties (the Debtor, the Reorganized Debtor, the Joint Ventures and Subsidiaries, and their respective Representatives), the Shareholder–Affiliated Parties (the Shareholders and their past and present Affiliates and their Representatives), the Settling Insurers, the Settling Physicians, and the Settling Health Care Providers. Amended Joint Plan, §§ 8.3, 8.4.

  There is no need for discovery on this issue because the Plan expressly sets forth the parties who are subject to the release provision, including the Debtor, the

Reorganized Debtor, the subsidiaries, and the Shareholders and their past and present Affiliates. Here, Dow Silicones is the new name of the Reorganized Debtor. Dow Inc. and Dow Chemical Company are the Shareholders and/or the present Affiliated Parties. This Court has found that the "the Plan Proponents have established that the release and injunction provisions under the Amended Joint Plan is appropriate in this bankruptcy action." The release and injunction provisions of the Plan are proper and must be enforced. *In re Dow Corning Corp.*, 287 B.R. 396, 416 (E.D. Mich. 2002).

Inasmuch as Dow Inc. did not exist until 2019, as supported by the Dow Defendants' submissions, Dow Inc. is dismissed. All the Dow Defendants must be dismissed from this action.

### D. Statute of Limitations

The Dow Defendants further move to dismiss Leiner's claims based on New York's three-year statute of limitations for personal injury clams set forth in N.Y. CPLR 214-c(1) because Leiner was injected on December 29, 1982. Leiner responds that it was not until November 24, 2020 that he noticed and experienced symptoms where the silicone was injected. A biopsy was performed on December 22, 2020, which Leiner claims revealed the faulty liquid silicone. Leiner is apparently claiming that the statute of limitations did not begin to run until he experienced the symptoms in November 2020, and, that the claims were fraudulently concealed.

8

In a bankruptcy action, the transferee court must apply the choice-of-law rules of the forum state to state-law tort claims. *In re Dow Corning Corp.*, 617 F. App'x 493, 495 (6th Cir. 2015); *In re Dow Corning Corp.*, 778 F.3d 545, 552 (6th Cir. 2015). The personal injury statute of limitations in New York is three years. NY CPLR § 214(5). *Hawkins v. Claims Adm'r of Settlement Facility*, No. J:21-CV-10764, 2021 WL 8343045, at *2 (E.D. Mich. Oct. 19, 2021). New York's statute of limitations for personal injury claims based on "exposure" to any substance, including by "injection" is three years. N.Y. CPLR 214-c(1). The statute of limitations begins to run from when Plaintiff discovered (or should have discovered) the alleged injury. *Id*.

Here, in his Re-Amended Complaint, Leiner alleges he first noticed and experienced symptoms on November 24, 2020 on the spot where he was injected with the silicone into his nose. (ECF No. 9, PageID.196) Leiner argues that his action, filed on July 12, 2022, is timely-filed under CPLR 214-c.

However, "by its own terms, CPLR 214–c shall not be applied in any action in which the alleged misconduct occurred prior to July 1, 1986, and the injury was or should have been discovered prior to that date." *Ruffing ex rel. Calton v. Union Carbide Corp.*, 193 Misc. 2d 350, 376, 746 N.Y.S.2d 798, 819 (Sup. Ct. 2002), aff'd sub nom. *Ruffing v. Union Carbide Corp.*, 1 A.D.3d 339, 766 N.Y.S.2d 439 (2003).

9

Accordingly, the three-year statute of limitations in CPLR 214(5) governs. This means that claims accrued on the date of a plaintiff's *initial* exposure to the injury-producing substance prior to July 1, 1986. In Leiner's case, the date of initial exposure of the alleged injury-producing substance was the injection on December 29, 1982. The three-year statute of limitations bars Leiner's claims filed in 2022 against the Dow Defendants.

> The Notes of Decision, N.Y. C.P.L.R. 214 (McKinney) provides:
>
> The Court of Appeals repeatedly held that such claims accrued on the date of the plaintiff's initial exposure to the injury-producing substance, refusing to confer the benefit of a discovery rule. *See Schmidt v. Merchants Despatch Transportation Co.*, 1936, 270 N.Y. 287, 300, 200 N.E. 824, 827 ('[T]he statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury. Consequential damages may flow later from an injury too slight to be noticed at the time it is inflicted. No new cause of action accrues when such consequential damages arise.').

N.Y. C.P.L.R. 214 (McKinney) Even if the 1986 discovery rule in toxic exposure cases applied in CPLR 214-c, where there is only one exposure, the date of first exposure applies. The Notes of Decision further provides:

> For cases not covered, what is the rule of accrual? Despite arguments that accrual occurs on the last day of exposure to something harmful, the Court in *Snyder v. Town Insulation, Inc.*, 1993, 81 N.Y.2d 429, 599 N.Y.S.2d 515, 615 N.E.2d 999, disavowed a date-of-last- exposure rule, any implications or loose language in the Court's prior opinions to the contrary notwithstanding. The Court adhered to the rule that a plaintiff's

initial exposure to a damaging substance starts the running of the statute of limitations because that is when injury first occurs. The Court suggested that a date-of-last-exposure rule would be inappropriate because an exposure victim could delay the running of the statute of limitations indefinitely. *See also MRI Broadway Rental, Inc. v. United States Mineral Prods. Co.*, 1998, 92 N.Y.2d 421, 681 N.Y.S.2d 783, 704 N.E.2d 550 (property damage claim accrued upon installation of asbestos, not when level of friable asbestos particles in the air exceeded safety standards).

N.Y. C.P.L.R. 214 (McKinney).

Based on the above analysis, any personal injury claim by Leiner must be dismissed based on the three-year statute of limitations under New York law.

### E. Fraudulent Concealment Claim

The Dow Defendants argue that Leiner's Fraudulent Concealment Claim must be dismissed. Leiner responds that the Dow Defendants should be liable because their actions were fraudulent in that the injections were not authorized by the Federal Drug Administration.

Leiner is arguing that equitable estoppel and equitable tolling are applicable to these claims in order to defeat the statute of limitations. "Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 646 (2d Cir.2007); *see also Marshall v. Hyundai Motor Am.*, 51 F.Supp.3d 451, 462

(S.D.N.Y.2014). To establish equitable tolling, a plaintiff must show that "the defendant wrongfully concealed material facts," which "prevented plaintiff's discovery of the nature of the claim, and that "plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, a157 (2d Cir.2012). On the other hand, "[t]o invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to [their] detriment." *Tardd v. Brookhaven Nat'l Lab.*, 407 F.Supp.2d 404, 416 (E.D.N.Y.2006) (internal quotation marks omitted). "Typically, [equitable estoppel] is invoked in cases in which [a defendant] has made misrepresentations concerning the statute of limitations or lulled the plaintiff into believing that it was not necessary for [them] to commence litigation." *Id.*

In this case, there are no factual allegations as to how the Dow Defendants made any misrepresentations of facts as to the silicone injections, other than Leiner's assertion that the FDA prohibited such. There are no facts alleged by Leiner that the Dow Defendants concealed material facts or made misrepresentations of fact as to the silicone injection resulting in a detriment to Leiner. When the bankruptcy action was filed in 1995 (and even prior to that time when a multi-district litigation panel was

12

appointed to deal with the numerous breast implant litigation involving silicone), the silicone products were at issue. Leiner could have discovered at that time the numerous allegations against the Dow Defendants and other manufacturers regarding allegations of harm from silicone products. There are also no factual allegations that the Dow Defendants made misrepresentations to Leiner concerning the statute of limitations or "lulled" Leiner into believing that it was not necessary for him to commence litigation. To the contrary, the bankruptcy action solicited claimants to file notices of claims before the bankruptcy court as to any injuries from silicone-related products manufactured by the Dow Defendants. Leiner has not shown that equitable estoppel is applicable as to his claims against the Dow Defendants.

### III.  CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that the Motion to Dismiss (ECF No. 5) filed by Defendants Dow Inc., Dow Silicones Corporation, and The Dow Chemical Company is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 16) filed by Plaintiff Sol M. Leiner is DENIED.

IT IS FURTHER ORDERED that the Motion for Leave to File Memorandum (ECF No. 18) filed by Plaintiff Sol M. Leiner is GRANTED, the Court having

reviewed such and response/reply thereto and declining to grant any relief requested therein by Plaintiff.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice and designated as CLOSED on the Court's docket.

S/Denise Page Hood  
DENISE PAGE HOOD  
United States District Judge

DATED: September 29, 2023

## CERTIFICATE OF SERVICE/MAILING

I certify that a copy of this document was served on this date, by electronic or ordinary mail to all parties in interest.

S/Sarah Schoenherr  
Deputy Clerk  
(313) 234-5090